**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                                          :
RONALD DICKERSON a/k/a
JD LAWRENCE,                                                   :

                              Plaintiff,                            : No. 1:16-cv-02695-LTS

                    v.                                               :

                                                                          : **ORAL ARGUMENT REQUESTED**
WB STUDIO ENTERPRISES, INC.,                          :
METRO-GOLDWYN-MAYER STUDIOS
INC., and SHOWTIME NETWORKS INC.,            :

                              Defendants.                        :
-------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**


                                        LOEB & LOEB LLP
                                        Jonathan Zavin
                                        Wook Hwang
                                        345 Park Avenue
                                        New York, New York 10154
                                        (212) 407-4000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     THE "TOTAL CONCEPT AND FEEL" OF THE PARTIES' WORKS ARE
COMPLETELY DISSIMILAR..........................................................................................2

II.    PLAINTIFF'S COMPILATIONS OF RANDOM AND TRIVIAL
"SIMILARITIES" ARE INSUFFICIENT TO WITHSTAND THIS MOTION.................4

CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Murdoch*,
   502 F. App'x 107 (2d Cir. 2012)................................................................................6, 7

*Alexander v. Murdoch*,
   No. 10 Civ. 5613, 2011 U.S. Dist. LEXIS 79503 (S.D.N.Y. July 14, 2011), *aff'd*,
   502 F. App'x (2d Cir. 2012)...........................................................................................7

*Alexander v. Murdoch*,
   No. 10 Civ. 5613, 2011 U.S. Dist. LEXIS 79543 (S.D.N.Y. May 27, 2011)................................8

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011) ...........................................................................4

*Arica Inst., Inc. v. Palmer*,
   970 F.2d 1067 (2d Cir. 1992) ............................................................................... 9-10

*Astor-White v. Strong*,
   No. CV 15-6326 PA, 2016 U.S. Dist. LEXIS 40608 (C.D. Cal. Mar. 28, 2016)........................8

*Brown v. Perdue*,
   No. 04 Civ. 7417 (GBD), 2005 WL 1863673 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177
   F. App'x 121 (2d Cir. 2006)............................................................................................9

*Canal+ Image UK, Ltd. v. Lutvak*,
   773 F. Supp. 2d 419 (S.D.N.Y. 2011) .............................................................................9

*Dean v. Cameron*,
   53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014)............................................................. 3-4

*DiTocco v. Riordan*,
   496 F. App'x 126 (2d Cir. 2012)....................................................................................9

*DiTocco v. Riordan*,
   815 F. Supp. 2d 655 (S.D.N.Y. 2011) ...................................................................7-8, 8-9

*Hayuk v. Starbucks Corp.*,
   157 F. Supp. 3d 285, 290 (S.D.N.Y. 2016) ..................................................................2, 3

*Hogan v. DC Comics*,
   48 F. Supp. 2d 298 (S.D.N.Y. 1999) ..............................................................................8

*Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*,
   557 F. App'x 77 (2d Cir. 2014).......................................................................................3

*Kroencke v. Gen. Motors Corp.*,
   99 F. App'x 339 (2d Cir. 2004) ................................................................................................ 3

*Lapine v. Seinfeld*,
   No. 08 Civ. 128, 2009 U.S. Dist. LEXIS 82304 (S.D.N.Y. Sept. 10, 2009), *aff'd*,
   375 F. App'x 81 (2d Cir. 2010) ................................................................................................ 5

*Lewinson v. Henry Holt & Co., LLC*,
   659 F. Supp. 2d 547 (S.D.N.Y. 2009) ................................................................................ 3, 4, 6, 9

*Mallery v. NBC Universal, Inc.*,
   No. 07 Civ. 2250, 2007 U.S. Dist. LEXIS 88960 (S.D.N.Y. Dec. 3, 2007), *aff'd*,
   331 F. App'x 821 (2d Cir. 2009) ............................................................................................ 4, 9

*Morris v. Wilson*,
   189 F. Supp. 565 (S.D.N.Y. 1960), *aff'd*, 295 F.2d 36 (2d Cir. 1961) .......................................... 7

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930) ........................................................................................................ 7

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ........................................................................................................ 4

*Rose v. Connelly*,
   38 F. Supp. 54 (S.D.N.Y. 1941) ................................................................................................ 7

*Salinger v. Random House, Inc.*,
   811 F.2d 90 (2d Cir. 1987) ...................................................................................................... 10

*Walker v. Time Life Films, Inc.*,
   784 F.2d 44 (2d Cir. 1986) .................................................................................................... 5, 6

*Warner Bros. Inc. v. Am. Broad. Cos.*,
   720 F.2d 231 (2d Cir. 1983) ...................................................................................................... 4

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) .............................................................................................. *passim*

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's FAC for failure to state a claim upon which relief may be granted.[1]

## PRELIMINARY STATEMENT

The works at issue in this case are not remotely similar, as a matter of law. Plaintiff's stage play *Scissors: Cut the Devil Loose* ("*Scissors*") is a religious allegory about the power of faith to overcome the "tribulations" of HIV, drug use and same-sex orientation. Defendants' three *Barbershop* films and television series address *none* of these themes, and are based on entirely different concepts and plotlines centered around the Black barbershop itself as a cultural institution in an evolving world. The dialogue, characters, sequence, pace and virtually every other creative element in the works are also completely different. The critical legal inquiry for the Court on this motion is to compare the ***"total concept and feel"*** of *Scissors* and the *Barbershop* works – the principal consideration in this Circuit, and one that Plaintiff ignores completely in his opposition.

Unable to identify any similarities in the works' total concept and feel, Plaintiff bases his opposition solely on cherry-picked compilations of random and scattershot "similarities" of the type that Second Circuit precedent requires the Court to ignore. But even if Plaintiff's purported "similarities" are considered, however, they are not actionable. For example, Plaintiff absurdly claims that the works impermissibly share an "emphasis on chicken" because, in *Scissors*, the characters perform the "Chicken Wing" dance and, in *Barbershop*, the characters eat chicken. An examination of Plaintiff's lists shows that virtually *all* of the claimed "similarities" are likewise based on meaningless abstractions, false and misleading descriptions, or otherwise unprotectible and trivial elements. Plaintiff's self-serving lists simply underscore why this frivolous action must be dismissed.

---

[1] Unless otherwise defined herein, capitalized terms are defined in Defendants' moving brief (DE 50). "Mov. Brief" and "Opp. Brief" refer, respectively, to Defendants' moving brief and Plaintiff's opposition brief (DE 61). "Zavin Decl." (DE 51) and "Dickerson Aff." (DE 62) refer to the parties' respective declarations on this motion.

**ARGUMENT**

## I.   THE "TOTAL CONCEPT AND FEEL" OF THE PARTIES' WORKS ARE COMPLETELY DISSIMILAR

Plaintiff's opposition glaringly fails to undertake the central inquiry of the substantial similarity analysis in this Circuit: "a comparison of the 'total concept and overall feel' of the works in question," *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 290 (S.D.N.Y. 2016) (Swain, J.), based on the "works as a whole," *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996).  *See also* Mov. Br. at 9-11 (discussing standards).  While Plaintiff spends several pages discussing the "total concept and feel" test in the abstract (Opp. Br. at 3-6),[2] Plaintiff declines to actually apply the test to the works themselves, because it defeats his claim entirely.

Unlike *Scissors*, none of the *Barbershop* works are Gospel plays; none are religious allegories; and none address *any* of the issues that run through all of *Scissors'* central plotlines, namely, HIV, drug use, sexual orientation, and the power of faith to overcome these societal "problems."  *See* Mov. Br. at 4-9 (providing synopses of works at issue).  Plaintiff's sole attempt to address these fundamental disparities is, remarkably, to disavow the basic premise of Plaintiff's own work (Opp. Br. at 8; emphasis added):

> The defendants attempt to label "Scissors" as [*sic*] gospel play dealing with overly religious overtones.  <u>That is not the case</u>.  Scissors is more of a mainstream play that address [*sic*] various issues such as racism, HIV which [*sic*] a Christian feel.

However, the synopsis contained in Plaintiff's own registered script for *Scissors* exposes Plaintiff's false mischaracterization of his own work. (Zavin Decl., Ex. A at 4):

> *The Lord allows Job's faith in him to be put to the ultimate test by lucifer. As Job comes across many obstacles and life threatening situations, lucifer believes he can get this Job to curse God unlike the other. The Lord allows lucifer to try anything he thinks that will diminish this Job's faith. lucifer believes that Job is not as strong as, The original JOB and being tried from the start don't help any. By having the name*

---

[2] Perhaps in an effort to confuse this simple issue, Plaintiff's opposition oddly discusses the Ninth Circuit's extrinsic and intrinsic tests for substantial similarity at length, which have never been endorsed by the courts in this Circuit.  (Opp. Br. at 5-6).

> *Job alone is no match for what lucifer has in store for him. lucifer under strict orders from God may not take Job's life.*

The central role of religion and faith in Plaintiff's work is also apparent from the play's full title, *Scissors: Cut the Devil Loose*; the Gospel music sung throughout the play; the resolution of each and every one of *Scissors*' central plotlines through the power of faith (Woody's "bat-tism" and ensuing gratitude towards God; Eddie's having "worked out" his sexual orientation with God; the drug-dealing Mo's statements to Job that he has been reading the Bible); and the play's emphatic concluding line, "It's a God thing!"[3] But, even ignoring the religious underpinning of *Scissors*, this action fails because not *one* of the plotlines in *Scissors* – based on the characters' struggles with HIV, drugs and same-sex orientation – appear in the *Barbershop* works. *See* Mov. Br. at 4-9.

In short, the total concept and feel of the works are completely *dis*similar. This alone mandates dismissal, whatever incidental and ancillary elements the parties' respective works may otherwise share. *See, e.g., Hayuk*, 157 F. Supp. 3d at 292 ("[courts] have found certain similarities to exist as to portions of an allegedly infringing work, but nonetheless held that substantial similarity did not exist because of overwhelming dissimilarities in the works when compared in 'total concept and overall feel'").[4]

---

[3] Plaintiff takes his disingenuous attempt to downplay the religious overtones of his play one step further by quoting a purported passage from *Scissors* (Opp. Br. at 8) that appears *nowhere* in his registered script (Zavin Decl., Ex. A), to bolster the false claim that *Scissors*, like the *Barbershop* works, is not centered on religion. To the extent Plaintiff is quoting from an unregistered version of the *Scissors* script, that unregistered version is irrelevant to Plaintiff's infringement claim. *See, e.g., Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 569 n.7 (S.D.N.Y. 2009) ("the Court cannot consider the Unregistered Manuscript in considering Plaintiff's copyright infringement claim").

[4] *See also, e.g., Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*, 557 F. App'x 77, 80 (2d Cir. 2014) (claim dismissed despite "similar elements" because the "accumulation of … differences gives [defendant's work] a substantially different 'total concept and overall feel' than [plaintiff's works]"); *Kroencke v. Gen. Motors Corp.*, 99 F. App'x 339, 340 (2d Cir. 2004) (claim dismissed despite certain shared similarities where the "total look and feel" of parties' works were "very different"); *Dean v. Cameron*, 53 F. Supp. 3d 641, 648-49 (S.D.N.Y. 2014) (claim dismissed even though works were "indisputably similar," where "any similarities between [parties'] works are

## II.     PLAINTIFF'S COMPILATIONS OF RANDOM AND TRIVIAL "SIMILARITIES" ARE INSUFFICIENT TO WITHSTAND THIS MOTION

Plaintiff attempts to cure this fatal defect by identifying a slew of random alleged "similarities" in the opposition brief (Opp. Br. at 10-13) and in a newly submitted affidavit (Dickerson Aff., Exs. A, B).  These compilations are irrelevant, because random and scattershot similarities of the kind Plaintiff has listed are universally rejected.  As the Second Circuit has explained, "[s]uch a scattershot approach cannot support a finding of substantial similarity because it fails to address the underlying issue: whether a lay observer would consider the works as a whole substantially similar to one another."  *Williams*, 84 F.3d at 590 (citations and quotation marks omitted; underline added).[5]  Accordingly, the works themselves "supersede and control" over "any contrary allegations, conclusions or descriptions of the works."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

Even if these compilations were considered in a vacuum, divorced from the works as a whole, the elements that Plaintiff identifies as "similarities" (Opp. Br. at 10-15) are *not* protectible in any event.  Rather, these "similarities" are based upon unprotectible ideas, *scenes a faire* and/or stock elements, or are otherwise *de minimis*, insubstantial or simply non-existent.  In virtually every case, Plaintiff's claimed "similarities" are based upon meaningless abstractions that do not manifest as similarities at all in the parties' expression.

- Ideas and *Scenes a Faire* and Stock Elements:  Many of the plot similarities Plaintiff

---

overwhelmed by their differences"); *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983) ("numerous differences tend to undercut substantial similarity"); *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 656 (S.D.N.Y. 2011) (claim dismissed because of "the stark differences between the works").

[5] *See also, e.g., Mallery v. NBC Universal, Inc*., No. 07 Civ. 2250, 2007 U.S. Dist. LEXIS 88960, at *22-23 (S.D.N.Y. Dec. 3, 2007) (rejecting "scattershot" listing of "several highly generalized similarities" between television series *Heroes* and plaintiffs' novel), *aff'd*, 331 F. App'x 821 (2d Cir. 2009); *Allen*, 739 F. Supp. 2d at 663 ("[R]andom similarities scattered throughout the works … cannot [by themselves] support a finding of substantial similarity."); *Lewinson*, 659 F. Supp. 2d at 573 (rejecting "random [and *de minimis*] similarities scattered throughout the works").

identifies constitute unprotectible ideas and unprotectible *scenes a faire* flowing naturally from those ideas, including, most obviously here, the unprotectible setting of a barbershop set in the African-American community.  *See, e.g., Williams*, 84 F.3d at 589 (where works "share a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers, these settings are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo.  Thus, though perhaps substantially similar, the settings are not protectible.").  These include, for example (Opp. Br. at 10-13), the use of a "family barbershop"; a father "who has helped and encouraged other people" through his barbershop (though in *Barbershop*, that father is not even a character and referred to in dialogue only); "white/black conflict" manifested naturally, in a work about a Black barbershop, through a White barber; the fact that the White barber is "acting too black," illustrated by his introduction with loud rap music; the use of the barbershop as "a gathering place, not just for people getting haircuts … [but] where people comment to each other, say, 'hello,' and hang out"; and the fact that "the barbershop is not always a place where work is getting done."  *None* of these ideas, *scenes a faire* and stock plot elements are subject to copyright protection.[6]

- Trivial and *De Minimis* "Similarities":  Most of the other purported "similarities" listed by Plaintiff are completely trivial, *de minimis* and patently insubstantial.  These include having a "pay phone on the wall" as a prop; a "black bandana" worn by a "troubled" character; a moment where "the owner flicks the lights and they

---

[6] *See, e.g., Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (copyright law does not protect "'scenes a faire,' that is, scenes that necessarily result from the choice of a setting or situation.  Neither does copyright protection extend to … 'stock' themes commonly linked to a particular genre."); *Lapine v. Seinfeld*, No. 08 Civ. 128, 2009 U.S. Dist. LEXIS 82304, at *24-26 (S.D.N.Y. Sept. 10, 2009) ("Stock elements resulting from the initial choice of subject matter are not protectible."), *aff'd*, 375 F. App'x 81 (2d Cir. 2010).

don't come on"; the fact that both parties' works feature a character named "Eddie" (two completely disparate characters); jokes in both works about Rosa Parks, the Jackson family and OJ Simpson (which are completely different jokes). These patently trivial and *in*substantial "similarities" are irrelevant, of course, to establishing that the works are *substantially* similar.[7]

- Non-Existent "Similarities": Underscoring the unreliability of Plaintiff's lists, other claimed similarities simply do not exist between the works at all, including the claims that both barbershops have "three chairs" (there are actually more in *Barbershop*); the "church lady" wearing a purple suit (a non-existent character in *Barbershop*, who appears in a deleted scene only); and the supposedly "infringing" use of Plaintiff's pseudonym, "J.D.," as a name of a *Barbershop* character.

- Meaningless Abstractions: Perhaps most significantly, virtually *all* of Plaintiff's claimed "similarities" exist at only the most general level of abstraction that do not materialize at all when the works are actually seen, such as the shared "emphasis on chicken." Other meaningless abstractions Plaintiff claims are unlawful include "a problem about music being played" (manifested in different ways); that both works include dancing and music; the inclusion of a "sassy" female character who has "a relationship with one of the men"; a woman who is "around eight months pregnant" (in *Scissors*, the same character is the "sassy" female; in *Barbershop*, a different

---

[7] *See, e.g., Williams*, 84 F.3d at 590-591 ("[Plaintiff's] claim fails here largely because the similar parts of the parties' works are unprotectible *scenes a faire* or trivial, scattered details."); *Alexander v. Murdoch*, 502 F. App'x 107, 109 (2d Cir. 2012) (affirming dismissal where "specific overlapping character traits and plot aspects … reflect superficial and *de minimis* details …."); *Walker*, 784 F.2d at 50 (dismissing infringement claims because "when the works are examined the claimed similarities either fail to materialize or prove entirely insubstantial"); *Lewinson*, 659 F. Supp. 2d at 573 ("while the dissimilarities between these scenes are many, the similarities between these scenes are at most *de minimis*, and more is required to meet the substantial similarity requirement.").

6

character entirely); a mock stick-up (by characters even Plaintiff does not claim are similar); someone chasing someone with a wooden instrument (a different instrument, and used under different circumstances).  These abstract and generalized "similarities" are expressed completely differently in the two works, and do nothing to support Plaintiff's claim.[8]

- <u>Character Mash-Ups</u>:  Plaintiff's mash-up character comparisons (Opp. Br. at 13-15) are facially just as lacking.  Among other things, Plaintiff impermissibly attempts to mix and match traits among several disparate characters in the parties' respective works, which of course cannot establish that any actual character in the *Barbershop* works is substantially similar to any actual character in *Scissors*.[9]  But even setting this aside, Plaintiff's own descriptions show that the claimed "similarities" consist of stock character elements and more meaningless abstractions and trivial details that cannot clear the high bar for establishing character similarity.  *See DiTocco v. Riordan*, 815 F. Supp. 2d 655, 667 (S.D.N.Y. 2011) ("The bar for substantial

---

[8] *See, e.g., Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (in formulating oft-repeated "abstractions test," explaining that "there is a point in this series of abstractions where [elements] are no longer protected, since otherwise the playwright could prevent the use of his 'ideas,' to which, apart from their expression, his property is never extended"); *Alexander v. Murdoch*, No. 10 Civ. 5613, 2011 U.S. Dist. LEXIS 79503, at *12-13 (S.D.N.Y. July 14, 2011) (rejecting "similarities" alleged "at an overly-abstract level of generality," such as "a character singing a sexually inappropriate song at a family gathering … [and] instances where a Latino boy looks up and voices his approval at the sight of a beautiful adult woman, where a [woman] who sheds her 'dowdy' clothes, 'fixes her hair' and 'becomes beautiful,' and where the characters engage in 'therapy sessions'") (internal citations and quotation marks omitted), *aff'd*, 502 F. App'x at 109 (affirming Rule 12(b)(6) dismissal where "specific overlapping character traits and plot aspects … reflect superficial and *de minimis* details [or] involve general abstractions insufficiently developed to merit protection").

[9] *See Rose v. Connelly*, 38 F. Supp. 54, 55-56 (S.D.N.Y. 1941) (rejecting plaintiff's attempt to demonstrate that two characters who were not alike were similar by splitting the characteristics of plaintiff's character among more than one of defendant's characters); *Morris v. Wilson*, 189 F. Supp. 565, 569 (S.D.N.Y. 1960) (rejecting plaintiff's claim that defendant "combined traits of two, three or more of her characters into a composite character in their play and employed 'evasive variation and coloration in order to veil the plagiarism'"), *aff'd*, 295 F.2d 36 (2d Cir. 1961).

similarity in a character is set quite high.") (citation omitted).  Indeed, courts in this
District have overwhelmingly rejected claims of substantial similarity where far
greater character similarities were present than those here.[10]

Far from establishing actionable substantial similarity, Plaintiff's lists of random alleged
similarities clearly illustrate why they carry no weight under settled law in this Circuit – because
they are "inherently subjective and unreliable, particularly where the list emphasizes random
similarities scattered throughout the works…."[11]  *Williams*, 84 F.3d at 590 (citation and internal
quotations omitted).  The total absence of substantially similarity here is further underscored by the
host of decisions in this District that have *repeatedly* dismissed infringement claims based on far
greater similarities – *bona fide* similarities in plot and theme – than the scattering of trivial and
unprotectible elements upon which Plaintiff's claim is based here.[12]

---

[10] *See, e.g., Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (no
infringement where characters had same name and were both half-vampire and half-human, of
similar age, and shared other characteristics such as "thin-to-medium builds, pale skin, dark messy
hair and a slovenly appearance"); *Alexander v. Murdoch*, No. 10 Civ. 5613, 2011 U.S. Dist. LEXIS
79543, at *31 (S.D.N.Y. May 27, 2011) (rejecting contention that characters were "substantially
similar because each is 'a stunningly beautiful, fiery, temperamental, Latina mother, with a thick
accent, who's in love with her Caucasian [ex-husband/husband] and always makes him do the right
thing, especially where her son is concerned'"), *adopted by* 2011 U.S. Dist. LEXIS 79503; *Astor-
White v. Strong*, No. CV 15-6326, 2016 U.S. Dist. LEXIS 40608, at *15 (C.D. Cal. Mar. 28, 2016)
(no infringement where central characters in both works were "'Black record moguls who rise to
power and become billionaires in the record industry' and have three children"); *see also* Mov. Br.
at 14-16.

[11] There are too many alleged "similarities" compiled in Exhibits A and B to Plaintiff's
improperly filed affidavit to address each individually, but even a cursory examination of these
compilations reveals all of the alleged "similarities" to be either inaccurate, trivial, based on
meaningless abstractions or based on unprotectible generic ideas and *scenes a faire*.

[12] *See, e.g., Williams*, 84 F.3d at 589 (no substantial similarity between two adventure stories
featuring modern-day children visiting park of ancient dinosaurs, with electrified fences, automated
tours, dinosaur nurseries, and uniformed workers); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 300,
310 (S.D.N.Y. 1999) (no substantial similarity between two works featuring half-human, half-
vampire protagonist named Nicholas Gaunt, who seeks to uncover truth of his origins through
flashback memories, is faced with choice between good and evil, is indoctrinated into forces of evil
by killing, and has a romance, because "[m]ost of these similarities . . . are unprotectible ideas");
*DiTocco*, 815 F. Supp. 2d at 672-73 (no substantial similarity between two adventure stories

8

Plaintiff attempts to cast his compilations of unprotectible "similarities" as nonetheless relevant by asking the Court to apply standards for "probative" or "striking" similarity (Opp. Br. at 9), which speak only to whether actual copying can be shown, and thus permit the Court to consider *unprotectible* elements of Plaintiff's work.[13]   *See, e.g., Lewinson v. Henry Holt & Co., LLC*, 659 F. Supp. 2d 547, 563 (S.D.N.Y. 2009) ("Probative similarity is a less demanding test than substantial similarity and requires only that the works are similar enough to support an inference that the defendant copied the plaintiff's work.").   But unlike probative similarity, the "discerning observer test" for determining substantial similarity "instructs that similarities attributable to unprotectible elements may as well not be similarities at all."   *Canal+ Image UK, Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 440 (S.D.N.Y. 2011).   Accordingly, this test requires the Court "to extract the unprotectible elements from [its] consideration and ask whether the *protectible elements, standing alone*, are substantially similar."   *DiTocco v. Riordan*, 496 F. App'x 126, 128 (2d Cir. 2012) (emphasis in original) (citation and quotation marks omitted); *see also* Mov. Br. at 10-11.   In short, the unprotectible elements in Plaintiff's lists – including all of the purported "similarities" discussed above – bear *no* relevance to the substantial similarity inquiry on this motion.

Plaintiff's theory (Opp. Br. at 17) that his compilations somehow show "comprehensive" non-literal similarity is also meritless.   Indeed, the single Second Circuit decision to address the concept of "comprehensive non-literal similarity," *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067 (2d

---

featuring shared idea of modern-day adolescent male named Percy, descended from Greek gods, featuring characters from Greek mythology and shared plot point of Zeus's missing lightning bolt); *Mallery*, 2007 U.S. Dist. LEXIS 88960, at *18-19 (no substantial similarity where works shared ideas of "(1) [a character] painting a future in which tragic and destructive events take place []; (2) having a prediction confirmed by a newspaper report; and (3) making an attempt to prevent a tragic event in light of a prediction of the future"); *Brown v. Perdue*, No. 04 Civ. 7417, 2005 U.S. Dist. LEXIS 15995, at *28-41 (S.D.N.Y. Aug. 4, 2005) (no substantial similarity between *The Da Vinci Code* and work also featuring notions of a "divine feminine" and the role of Rome in establishing a male-dominated religion), *aff'd*, 177 F. App'x 121 (2d Cir. 2006).

[13] As noted in Defendants' moving brief (Mov. Br. at n.2, n.4), for purposes of this motion only, Defendants do not challenge access or actual copying of Plaintiff's work.

Cir. 1992), rejected the very type of self-serving list that Plaintiff relies on here. *Id.* at 1073 (rejecting plaintiff's reliance on 70-page appendix listing "word-for-word comparisons" between the parties' works, and "find[ing] the seventy Appendix pages insufficient to demonstrate comprehensive non-literal similarity" because such comparisons "do not speak to the question of whether [the defendant] has taken the 'fundamental essence or structure' of … [the plaintiff's] works"). Rather, that standard requires that the works share a "fundamental essence and structure," which is lacking here for the same reasons that the total concept and feel of the works as a whole are entirely different. *See* Argument, Section I *supra*.

Plaintiff's reliance (Opp. Br. at 7, 17) on *Salinger v. Random House, Inc*., 811 F.2d 90 (2d Cir. 1987), is equally misplaced. That decision held, unremarkably, that 44 letters registered for copyright by author J.D. Salinger were sufficiently original in their "sequence of thoughts, choice of words, emphasis, and arrangement" to warrant copyright protection. *Id.* at 98. The Second Circuit determined that Salinger was entitled to injunctive relief because, among other things, large portions of the copyrighted "letters are quoted or paraphrased on at least 40 percent of the book's 192 pages," and "make the book worth reading." *Id.* The comprehensive appropriation at issue in *Salinger* – in a book centered on the very copyrighted letters that were infringed – simply highlights just how lacking Plaintiff's compilations of trivial "similarities" are in this case, and underscores the frivolousness of Plaintiff's claim of "comprehensive" similarity with respect to the works at issue.[14]

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the FAC be dismissed in its entirety, with prejudice.

---

[14] Finally, Plaintiff's bald proposition (Opp. Br. at 15) that *Barbershop 2*, *Barbershop 3* and the *Barbershop* Series are derivative works of the original *Barbershop* film, and thus are necessarily also derivative works of *Scissors*, finds no support in the law. Not surprisingly, Plaintiff is unable to cite a single case standing for this proposition, because it is wrong. *See* Mov. Br. at 20.

Dated: New York, New York
      December 8, 2016

                        LOEB & LOEB LLP

                        By:   */s/ Jonathan Zavin*
                            Jonathan Zavin
                            Wook Hwang
                            345 Park Avenue
                            New York, New York 10154-1895
                            (212) 407-4000

                        *Attorneys for Defendants*

100302204

11